STATE OF NEBRASKA, EX REL. RICHARD S. HORTON, TRUSTEE,
v. CHARLES T. DICKINSON, JUDGE.

FILED FEBRUARY 19, 1902.   No. 12,510.

1. **Mandate:** MANDAMUS. If the district court mistakes or misconstrues the mandate of this court, its obedience may be enforced by mandamus, which is an appropriate remedy to make the mandate effective. *State v. Omaha Nat. Bank,* 60 Nebr., 232; *State v. Norris,* 61 Nebr., 461.

2. ——: ——. A cause was remanded with directions to proceed in a certain way. The trial court to which the mandate was directed, on the application of one of the parties in an independent action, issued a restraining order enjoining the other party from proceeding further in the original cause in pursuance of the mandate until he had established his right to the subject-matter of litigation. *Held,* On an application for a writ of mandamus to the trial court, that the restraining order thus issued was, in legal contemplation, a disobedience of the mandate, and should be vacated, and the parties permitted to

proceed in the main action according to the provisions of the mandate filed therein.

3. District Court: LEGAL AND EQUITABLE JURISDICTION: FORMS OF ACTION. The district courts are courts of general legal and equitable jurisdiction, no forms of action are recognized, and the court has power to administer either legal or equitable relief according as the pleadings warrant and the proof requires. *Kirkwood v. First Nat. Bank of Hastings,* 40 Nebr., 484.

ORIGINAL application for a writ of mandamus to compel the respondent to vacate a restraining order allowed in a certain action, and to proceed to a hearing in said action in accordance with a mandate issued by this court. *Writ granted.* SULLIVAN, C. J., dissenting.

*Hamilton & Maxwell* and *Richard S. Horton,* for relator.

*Smyth & Smith, contra.*

HOLCOMB, J.

The relator prays a writ of mandamus addressed to the respondent, as judge of the district court of Douglas county, directing him to vacate a restraining order allowed in a certain action wherein Hayden Bros. are plaintiffs and the relator defendant, restraining the defendant from further proceeding in a cause pending in said court, entitled, "The State, ex rel. Hayden et al., v. The Greater America Exposition et al.," which had been remanded by this court for further proceedings in accordance with the mandate issued in said action, and also to require the respondent to proceed to a hearing in said last-mentioned action in pursuance of the terms of said mandate and the opinion of this court in the decision of the cause. The action mentioned has been twice brought to this court for its decision. *Horton v. State,* 60 Nebr., 701, 63 Nebr., 34. A full statement of the matters in litigation will be found in the two opinions delivered in the case just cited. One phase of the controversy relates to the right of the defendant, Horton, as trustee of the Greater America Exposition, which has been adjudged a bankrupt, to have restitu-

tion of certain moneys received by Hayden Bros. from the exposition company in pursuance of a judgment rendered on an application by them for a writ of mandamus, which judgment, by the decision of this court, was afterwards reversed. See opinion and judgment filed in the case first cited. When the cause was brought here the second time it was held that, where a party to a cause has obtained money or property under or by virtue of a judgment which is afterward reversed, the court has power to compel restitution by summary proceedings in that case, and that such restitution is a matter of right, and does not depend upon the merits of the controversy between the parties. The judgment of the trial court was reversed, and the cause remanded for further proceedings, not inconsistent with the opinion, under an order which had been issued therein to show cause why restitution of the moneys received by Hayden Bros. in pursuance of the judgment afterwards reversed, should not be adjudged against them. See opinion and judgment last cited. Thereafter, and after filing in the trial court in said cause the mandate of this court to proceed with the case under the order to show cause why restitution should not be ordered in conformity with the court's views as expressed in the opinion, Hayden Bros. applied to the respondent for, and obtained, an order or writ restraining the relator from proceeding further in the cause, which had been remanded for further proceedings, "until he has first established in such action or proceeding, as he may select, or this [the district] court direct, the want of right upon the part of these plaintiffs [Hayden Bros.] to the said $10,000 at the time the same was paid as aforesaid by the exposition to them—the said plaintiffs." It is argued by the relator that the restraining order prohibits him from proceeding further in the cause remanded as directed by the mandate of this court, and is, in legal effect, a disobedience by the trial court of the mandate directed to it; that it sets at naught the judgment rendered in the action on appeal, and illegally deprives the relator of his rights to proceed to a final deter-

mination of the action in pursuance of the judgment and mandate duly rendered and issued in that behalf.

The right of the relator to the relief prayed in a proper case has already been decided in the case of *State v. Omaha Nat. Bank*, 60 Nebr., 232, wherein it is held that if the district court mistakes or misconstrues the mandate of this court, its obedience may be enforced by mandamus; and in *State v. Norris*, 61 Nebr., 461, it is said by the present Chief Justice: "Mandamus is, of course, an appropriate remedy to make the mandate of the reviewing court effective,"—citing *State v. Omaha Nat. Bank, supra; Perkins v. Fourniquet*, 14 How. [U. S.], 313, 14 L. Ed., 435; *In re Washington & G. R. Co.*, 140 U. S., 91, 11 Sup. Ct., 673, 35 L. Ed., 339; *In re City Nat. Bank*, 153 U. S., 246, 14 Sup. Ct., 804, 38 L. Ed., 705; *Mason v. Pewabic Mining Co.*, 153 U. S., 361, 14 Sup. Ct., 847, 38 L. Ed., 745; *In re Sanford Fork & Tool Co.*, 160 U. S., 247, 16 Sup. Ct., 291, 40 L. Ed., 414. We can not escape the conclusion that the restraining order effectually nullifies the mandate, which directed the district court to proceed to a final determination of the cause on the order issued to show cause why restitution should not be awarded before further action is taken in the proceedings on the merits under the issues as raised by the pleadings. It is very true the trial court has not directly proceeded in the action in disregard of the requirements of the mandate. A restraining order, however, was issued by it on the application of Hayden Bros., against whom the order to show cause was directed, preventing the relator from taking any further steps in the case, or applying to the court for any relief, or in any way invoking its jurisdiction in that action, until, in an independent suit, the merits of the issues involved shall have been tried, and determined adversely to the party who was being proceeded against under the order to show cause; that is, it has been decided that the question of restitution should first be inquired into and determined before proceeding to a trial of the cause on its merits, and by this collateral proceeding the attempt is made to compel the

relator, in plain disregard of the legal consequences flowing from the mandate and opinion in the case, first to try the merits of the main controversy before he may invoke the aid of the court for a judgment of restitution, to which we have said he is first entitled, as a condition precedent to a trial and determination of the principal controversy. Although indirectly accomplished, and not at all doubting that the order was issued in good faith by the learned trial court, we can but regard it as, in legal contemplation, a disobedience of the mandate,—a misconstruction of its force and efficacy, which this court, in justice to itself, should correct, when the action taken is challenged by any appropriate proceeding. If the position for counsel for respondent is tenable, then the execution of every order, decree, and mandate issued out of the supreme court may be enjoined, its provisions disregarded and set at naught,— the inevitable consequences of which would be judicial chaos. It is said by counsel for relator that the temporary restraining order issued by the respondent was issued in an independent action of which the court had full jurisdiction, was based upon alleged rights not involved in the case in which the mandate had issued, and that on principle it is the same as an application to and ruling of a court of competent jurisdiction for a continuance, or an order of a court of equity to stay an action at law because if enforced it would work injustice, and that the court's ruling or judgment thereon can not be controlled by mandamus, even though the effect be to prevent the enforcement of the mandate. And, to emphasize the proposition, it is suggested that if a district court of another county, in the exercise of its equity jurisdiction, should grant an injunction restraining the parties from proceeding in the original case under the mandate, it would not be contended that this court, upon an original application for a writ of mandamus, would command such district judge to set aside his restraining order and refuse to proceed further in the case; that such action would be the exercise of a judicial discre-

tion that can not be controlled by mandamus. We do not think the supposed case analogous to the one being considered; but, even if it were, we have no doubt of the authority of this court to repel the intrusion as unwarranted, and require the district court to which the mandate was directed, and which had acquired jurisdiction of the subject-matter, to proceed with the cause in disregard of the attempted interference by another court of co-ordinate jurisdiction. It is a rule of general acceptance that, in cases of concurrent jurisdiction, the leading principle to be applied is that the court which first acquires possession of the cause will retain its jurisdiction throughout, and make final disposition of the cause. *Hawes v. Orr,* 10 Bush [Ky.], 431; *Hardeman v. Battersby,* 53 Ga., 36; *Ober v. Gallagher,* 93 U. S., 199; *The Mary R. McKillop,* 23 Fed. Rep., 829; *Barkdull v. Herwig,* 30 La. Ann., 618. Says the supreme court of Ohio: "Where a court of competent jurisdiction acquires possession of the subject-matter of litigation, and the right of a party to prosecute his action once attaches, the right of the court to retain the case, and of the party to prosecute it, can not be defeated by the institution of proceedings in another court, although of concurrent and co-ordinate jurisdiction." *Sayler v. Simpson,* 45 Ohio St., 141, 146; *Dwyer v. Garlough,* 31 Ohio St., 158. The authority of the court first obtaining jurisdiction of the subject-matter continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of co-ordinate authority is at liberty to interfere with its action. *Maclean v. Wayne Circuit Judge,* 52 Mich., 257; *Shields v. Riopelle,* 63 Mich., 458; *Henry v. Tupper,* 27 Vt., 518; *Hickman v. Painter,* 11 W. Va., 386.

But it is urged that the district court, having jurisdiction to act, its discretion as to the manner of acting can not be controlled by the writ of mandamus. But the question in controversy is not one of jurisdiction of the lower court to act, but of authority of the appellate tribunal to coerce obedience to its mandates. In almost, if not all, the

authorities cited as to the right to coerce compliance with
a mandate, the jurisdiction of the court to act in the mat-
ter was beyond question, and the action taken could have
been reviewed either by error or appellate proceedings, or
by mandamus.  The latter remedy was resorted to because
the relator's right thereto was clear, and because he had
no plain, speedy and adequate remedy by the ordinary pro-
ceedings in appeal, by error proceedings, or otherwise.
This is the test, and not whether the court sought to be
coerced had jurisdiction over the subject-matter and the
parties in the action taken or contemplated, in disregard
of the directions contained in the mandate.  In the case at
bar it is to be noted that the restraining order was not is-
sued by a court of co-ordinate jurisdiction, but from the
court in which the mandate was filed.  It is the same court,
in any and every view of the case, which is exercising its
general legal and equitable powers that may in the original
action be called into play with equal effectiveness as in an
independent proceeding.  The action is with regard to the
same subject-matter embraced in the trial of the cause in
which the mandate was issued and filed.  The collateral
proceedings were, to all intents and purposes, a part of or
branch of the original litigation, and, although directed
against one of the parties to the litigation, was in effect an
order preventing further proceedings in that action in ac-
cordance with the terms of the mandate.  It is as though
the trial court had ruled that, notwithstanding the opinion
and the mandate issued thereon, a trial would be ordered
on the main issues, and the question of restitution be held
in abeyance in the meantime.  If this may be accomplished,
then, indeed, would a suitor be confronted with insur-
mountable obstacles barring a final disposition of his cause
in conformity with rights regularly adjudicated in his
favor.  The mandates of this court would furnish a basis
for a retrograde movement, rather than to stand as a monu-
ment of the progress made in successive steps of litigation,
and serve as a guide for future proceedings.  The force and
effect of the provisions of a mandate ought not thus to be

overcome and neutralized.  If permissible, it would, in many instances, deprive a party litigant of a substantial right earned after tedious and expensive litigation, and require useless and needless expense and time in correcting the injustice done him by the prosecution of a new proceeding on appeal to establish that which has already been adjudicated.  The legal effect of the restraining order is to prevent the court and the parties from carrying out the mandate of the supreme court, and this, we hold, can not be effectuated, either by a direct order to that effect, or by indirectly restraining the parties from further proceeding in the cause in pursuance thereof.  *State v. Norris,* 61 Nebr., 461, and authorities therein cited; *State v. Judge of Civil Dist. Ct.,* 19 So. Rep. [La.], 666; *Koonce v. Doolittle,* 37 S. E. Rep. [W. Va.], 644; *Ex parte Mansfield,* 11 App. D. C., 558; *Finn v. Hoyt,* 52 Fed. Rep, 83; *Bogert v. Jackson Circuit Judge,* 76 N. W. Rep. [Mich.], 983; *State v. Webre,* 11 So. Rep. [La.], 706.

We are cited to different authorities holding to the rule that equity will relieve against judgments, decrees etc., procured through fraud, mistake or other causes making it manifestly unjust to permit their enforcement, in support of the right to resort to the writ of injunction as was done to prevent further proceedings in the cause remanded by this court for that especial purpose.  These authorities are not, we think, in point.  In those cases a court of law could administer no relief.  The judgments were the result of the interposition of causes which rendered it inequitable and unconscionable to permit their enforcement.  To apply them to the propositions involved in the consideration of the present action presupposes that in the due administration of the law in a pending action, with all parties before the court, an inequitable, unjust and unlawful advantage will be gained by one of the parties, unless restrained from further proceeding therein.  It is on the assumption that the court can not grant the relief which the parties may in law or equity be entitled to.  The position is untenable, and the rule invoked has no application,

because the cases are not analogous. It is also argued that the peculiarities surrounding the case out of which the injunction proceedings grew are of such extraordinary character as to justify resort to a court of equity and the issuance of an injunction of the nature granted against the relators, and that, without resort to the extraordinary relief applied for, the parties against whom restitution is asked are utterly remediless and wholly unable to protect themselves in their property rights in the action originally begun by them. Briefly, the argument is predicated on the proposition that they are lawfully entitled to the moneys in controversy, and that the exposition company and the relator, as trustee in bankruptcy of its affairs and estate, have no claim, right or title, legal or equitable, thereto,— that, on the final determination of the litigation, they will be so adjudged. It is further contended that, after the payment of the disputed moneys to them by the exposition company, it became a bankrupt, and its affairs passed into the hands of the relator as trustee in bankruptcy under the laws of the United States, and that the time of filing claims against the bankrupt estate has long since expired; that if restitution is adjudged, and the disputed moneys paid to the relator as trustee in bankruptcy, he is beyond the jurisdiction of the state courts, and can not be sued to recover it back in the event it finally be determined that the plaintiffs in the injunction suit are entitled to it; that no tribunal is open to them for its recovery, and a judgment in their favor after restitution in the cause in which the mandate was issued would be wholly worthless, of no avail to them, and with no method of enforcement, and that they would thereby be deprived of their property rights in a large sum of money by the forms of law, and yet in violation of every principle of justice and equity. Without pausing to analyze all that is presented in favor of the position of Hayden Bros'. right to maintain the injunction suit notwithstanding the mandate of this court to proceed in the original action, we do not think the questions presented and the consequences likely to follow are so

State v. Dickinson.

serious as pictured. Let us see what the situation is: An order has been issued in the main case to show cause why the plaintiffs in that action should not be adjudged to make restitution of the moneys received by them from the defendant under a judgment in their favor which was afterwards reversed. It has been decided that such restitution is a matter of right, and does not depend upon the merits of the controversy between the parties. Whether this rule of law is unyielding and without exception, we need not here discuss or determine. Certain it is that equity follows the law, and can not be resorted to for the purpose of overturning one of its well-settled principles. If the rule of law is absolute that in all cases restitution should be adjudged unqualifiedly, without regard to the merits of the controversy, then a seeming hardship in an individual case must be endured in order to best promote those principles which are deemed essential for the preservation of rights and protection of interests generally of all litigants in the administration of justice. However this may be, the rights of all parties in interest, it appears to us, ought to and can be adjudicated in the one action which has proceeded to the point where interfered with by the order of injunction which is now the subject of consideration. Counsel are in error in their position that, to obtain whatever relief their clients may be entitled to, they must invoke the aid of a court of equity in an independent action. We are altogether satisfied that, under our Code of Procedure, the trial court is, in the trial of the cause or any branch thereof, empowered and authorized to administer to the respective parties the relief to which they may be entitled, either legal or equitable. Under the order to show cause why restitution should not be adjudged against the plaintiffs or relators in that action, they may, under our form of practice, present any defense, legal or equitable, which they may be possessed of, and the court will award the proper relief, as justified by the pleadings and the evidence. The distinctions between actions at law and suits in equity and the forms of all such actions are abolished. Code of Civil Procedure, sec. 2.

If the facts pleaded constitute a cause of action or de-
fense the courts are bound to award the relief due. *Alter
v. Bank of Stockham*, 53 Nebr., 223, 230. The district
courts are courts of general and equitable jurisdiction, and
in all civil cases no forms of actions are recognized, and
the courts have power to administer either legal or equita-
ble relief, as may be warranted by the pleadings and sus-
tained by the proofs. *Kirkwood v. First Nat. Bank of
Hastings*, 40 Nebr., 485. The relator is entitled to the re-
lief prayed. It is the duty of the respondent to vacate the
restraining order, and thereby give to the parties an oppor-
tunity to proceed in the main case in accordance with the
mandate filed therein. No formal order will issue at pres-
ent, as we assume the respondent will act in conformity
with the views herein expressed when advised thereof.

JUDGMENT ACCORDINGLY.

SULLIVAN, C. J., dissenting.

The injunction was granted in an original action brought
by Hayden Bros. to prevent the relator from enforcing a
judgment.which was claimed to be inequitable and unjust.
The district court had jurisdiction of such actions and
authority to award the relief demanded. It may be that
the petition was deficient in equity, but certainly the
jurisdiction of the court and the validity of the order, do
not depend upon the legal sufficiency of the pleading.
Whether the facts alleged constituted a cause of action, and
entitled the plaintiffs to equitable relief, was a judicial
question, which the court had authority to consider and.
decide; and the right to decide included, of course, the
power to make a binding decision,—a decision which,
whether right or wrong, would be conclusive on the parties
until set aside in a direct proceeding. *Trumble v. Will-
iams*, 18 Nebr., 144; *Taylor v. Coots*, 32 Nebr., 30; *Head
v. Daniels*, 38 Kan., 1; *Frankfurth v. Anderson*, 61 Wis.,
107. It is true that the relief sought in the equity case
might have been, under the reformed procedure, presented

as a defense in the law action; but that is not a consideration of controlling importance. A court, in the exercise of its inherent authority to enjoin unconscionable judgments, is not without jurisdiction merely because the facts upon which its action is grounded are stated in a petition instead of in an answer. The proceeding may be irregular, but if the facts presented to the court are sufficient to invoke judicial action, the judgment pronounced, however erroneous, is not void, and, therefore, not subject to collateral attack. Van Fleet, Collateral Attack, sec. 61; 17 Am. & Eng. Ency Law (2d ed.), 1069. In this case one of two things is true: Either the injunction granted by the district court is void for want of jurisdiction, or it is valid. If it is void, then it was never an effective restraint upon the relator and he would not have been in contempt had he moved the court to proceed under the motion for restitution. In this view of the matter, it can not be said that the court refused, either directly or indirectly, to execute the mandate, and, consequently, should not be coerced by mandamus. But, on the other hand, if the court was acting within its jurisdiction, and made the order in question in the exercise of its equity powers, the order is valid, and can not be annulled in an action or proceeding to which Hayden Bros. are not parties. The majority opinion seems to go upon the theory that the mandate of this court is, under all circumstances, absolute, imperative and inexorable. This, I am convinced, is not the law. Events may, and often do, occur after the trial in the district court that would make the enforcement of the judgment rendered by this court, upon the record, grossly and shockingly unjust. Facts existing before judgment was rendered, but discovered afterwards, may entitle a litigant to a new trial. In such cases courts of equity take jurisdiction and award an injunction *pendente lite*. If the party suing for a new trial is really, according to established equitable principles, entitled to have the judgment against him set aside, is his right in any way affected by the fact that a reviewing court affirmed the judgment and directed

its enforcement? Certainly not. There is in every mandate an implied reservation. It does not assume to deprive courts of equity of the jurisdiction which they had before the judgment of the appellate court was given. It has reference only to the case in hand, and does not undertake to deal with other rights of action which the defeated suitor may have; such, for instance, as the right to restrain the enforcement of a fraudulent judgment. The district court could not rightfully refuse to execute the judgment of this court, but it could, on equitable grounds, enjoin the relator. I do not say that the court was right in granting the injunction; but I do say that 'it acted within its jurisdiction, and that its order in the premises is not null.