68179. INTERNATIONAL IMAGES, INC. et al. v. SMITH.

BIRDSONG, Judge.

Trover. Construing the evidence in this case in the light most favorable toward the prevailing party and resolving all conflicts against appellants, as apparently the jury did (*Cotton v. John W. Eshelman & Sons*, 137 Ga. App. 360, 365 (223 SE2d 757)), the jury was entitled to conclude the following:

On or before May 1979, Maloy and Chrietzberg determined to build a prototype of a pontoon supported houseboat with the intent of custom manufacturing such boats. At the time in May of 1979, Maloy and Chrietzberg were officers of International Images, Inc., a corporation used for advertising and other purposes. After the decision to make the first boat was made, Maloy together with Chrietzberg went to Lake Lanier at the suggestion of a friend to talk with Smith about renting space adjacent to Lake Lanier to store material to be used in building the houseboat. Though his statement was disputed, Smith testified that at the time of this discussion, nothing was said about a corporation. Smith was under the belief that Maloy in his individual and personal capacity rented a shed and obtained permission to use Smith's dock in order to float and launch the projected houseboat. Over the next three years, Maloy individually paid Smith the stipulated rent for the shed. Sometimes Smith collected the rent personally in cash by going to Maloy's place of business. Other times Maloy paid by check. These checks were written upon a corporate account of International Images, Inc., and later upon the account of The Great Inland Ship Company. All assets of International Images, Inc., relating to the houseboat were transferred to The Great Inland Ship Company after the shed was rented in May 1979. It is undisputed that Smith was not aware of the existence of the successor corporation nor shown any papers concerning the transfer to The Great Inland Ship Company. In fact there was evidence to support a jury

conclusion that Smith was unaware of any interest in the shed by either corporation until this dispute arose in May 1982.

Two events occurred in May 1982 that brought the present controversy to a head. Maloy failed to make rental payments for two consecutive months. Smith called Maloy's office but was unable to make contact with Maloy or find out where Maloy might be. In fact, Maloy had been arrested upon a charge of child molestation, removed to jail, and did not come back to his place of business. Chrietzberg, an attorney, represented Maloy in the criminal proceedings. Maloy was convicted and sentenced to a number of years to serve. As a result, Chrietzberg "purchased" Maloy's interest in the houseboat by transferring Maloy's share in The Great Inland Ship Co. to himself. Chrietzberg then determined to change the pontoon design of the boat, simplifying the construction and lessening the need for much of the material stored in the shed rented to the company by Smith. Chrietzberg advertised the material for sale.

On a particular weekend in May 1982, Chrietzberg took an interested buyer to the shed to look at the stored material. At that time, Chrietzberg for the first time took a complete inventory of the contents of the shed. As Chrietzberg left the shed, Smith came up and complained that Maloy was two months delinquent in rental payments. It was at this time that Chrietzberg informed Smith that Maloy was in jail and that he was now the sole owner of the material stored in the shed. Chrietzberg informed Smith that he intended to sell some of the material to pay the corporation's delinquent rent and had advertised for that purpose. Smith refused to allow Chrietzberg the right to remove anything from the shed until the rent was paid and some proof was shown that Chrietzberg was now the owner rather than Maloy. Chrietzberg left with his buyer without submitting any documentary evidence of ownership.

A week later, Chrietzberg returned to the shed a second time. This time an automobile was parked so close to the shed door that no one could enter it. Once again Smith demanded the payment of his back rent and some proof that Chrietzberg was now the owner of the material in the shed. Once again, Chrietzberg left.

International Images, Inc. and The Great Inland Ship Company (hereinafter referred to as "Chrietzberg") then brought this suit in trover demanding the fair value of the goods rather than the return. It is uncontested that Smith makes no claim to ownership of the corporate chattels claimed by Chrietzberg and in effect concedes that the property in fact is the property of Chrietzberg and/or The Great Inland Ship Co. It also is uncontested that Chrietzberg has made no effort to pay the two months delinquent rent, nor ever shown any corporate papers to Smith.

After a trial by jury, with full instructions to the jury, the jury

found against Chrietzberg and in favor of Smith's counterclaim for two months rent in the amount of $300. Appellants bring this appeal enumerating several alleged errors, treated hereinafter. *Held*:

1. In essence enumerations 1, 3, 4, and 5 argue that the state of the evidence demanded a finding in favor of Chrietzberg and failed to support a finding in favor of Smith.

Both parties are in agreement that a bailment is involved. Smith in his counterclaim sought damages for a breach of the lease agreement whereas Chrietzberg complained that Smith had exercised possessory rights over property belonging to the corporation and thus converted the property. In order to present a cause of action for conversion, Chrietzberg had to show either an act of dominion over the personal property of another, inconsistent with the bailor's rights, or an unauthorized appropriation by the bailee. *Kornegay v. Thompson*, 157 Ga. App. 558, 559-560 (278 SE2d 140). However, Smith was, in the eyes of the law, a bailee for hire. As such he had a special lien upon the property stored with him, and he was entitled to retain possession of it until all the rental charges were paid and indicia of changed ownership presented. *Penick v. Almand*, 17 Ga. App. 589 (87 SE 845). In a trover action against a bailee for hire, it is a condition precedent to the bailor's right to recover that it be shown that, with the demand, there was an offer to pay rental charges. *Steadham v. Baskin*, 51 Ga. App. 36 (179 SE 636). No conversion is shown where the warehouseman refuses to deliver the stored goods without payment of rent or presentation of indicia of ownership, or at least the giving of good security to indemnify the bailee should the right to possession ultimately be shown to have been vested in another. *Hardeman & Sparks v. Battersby*, 53 Ga. 36 (1).

Likewise, we are not convinced that Chrietzberg made an unequivocal demand for delivery of the stored materials. He indicated to Smith that he had advertised the material and desired to sell some of it in order to pay the delinquent rent. However, there is nothing in the record that he made an unequivocal statement that the property was his, furnished proof thereof, and demanded delivery to himself at that time to permit a partial sale or delivery. See *McDaniel v. White*, 140 Ga. App. 118, 119 (230 SE2d 500). In fact on each occasion when Smith demanded payment of rent and proof of ownership, Chrietzberg left without further argument.

Under all the facts presented to Smith in May 1982, we are constrained to conclude as did the jury that there was no conversion manifested by Smith's refusal to deliver the material in his shed, but that he simply deferred delivery until after the rent was paid and Chrietzberg showed a right to immediate possession. *Boatright v. Padgett Motor Sales*, 117 Ga. App. 578, 581 (161 SE2d 402).

Appellants argue that the conversion is continuing and that be-

cause the jury returned a verdict for rent in favor of Smith, the jury had to find that the property belonged to Chrietzberg. They argue that the jury should also have found the conversion of the property at the value shown by the proof and offset that value against the rent due to Smith. That argument at least superficially has much merit. However, it is clear that the action and issue presented to the jury called for a decision as to whether a conversion occurred on May 23 or May 30, 1982. Chrietzberg for instance, seeks interest from the time of conversion, i.e., May 1982. While Smith in effect conceded that as of the time of the suit the property rightfully belonged to Chrietzberg, Smith as of the alleged time of conversion simply demanded the payment of rent and indicia of ownership or right to possession prior to surrender. As we have held, that does not legally amount to a conversion. At no time after the alleged conversion on or before May 30, 1982, does the evidence in this case reflect an offer to pay back rent nor the tender or proof of ownership with a subsequent demand so as to fulfill the condition precedent to a conversion. Apparently insofar as Smith is concerned, Chrietzberg can recover his property at any time as soon as the rent is paid. Thus, we reject any argument that because of the jury's verdict in favor of rent due Smith or Smith's subsequent acknowledgement that Chrietzberg is the lawful owner of the bailed property, this verdict for rent or the subsequent failure to deliver possession should be translated into a conversion.

2. In enumeration of error 2, appellants contend that the trial court erred in refusing to give a requested charge. This requested charge dealt with the subject of damages. It is the law in this state that where damages are sought by the plaintiff but a verdict is returned in favor of the defendant, the failure to charge on the issue of damages is at worst harmless error. *Marshall v. Fulton Nat. Bank*, 155 Ga. App. 51, 52 (270 SE2d 281). Moreover, the requested charge is argumentative in that it assumes the truth of facts favorable to the appellant, which are disputed facts in the trial. See *Ferry v. State*, 161 Ga. App. 795, 800 (6) (287 SE2d 732). Lastly, the trial court in fact charged the principle involved but without the argumentative portion requested. Where the charge given substantially covers the applicable principles, failure to give an instruction in the exact language requested is not error. See *Leutner v. State*, 235 Ga. 77 (5) (218 SE2d 820).

3. Lastly, appellants contend the trial court erred in refusing an appeal in forma pauperis. However, appellants have not submitted evidence to this court to show the trial court abused its discretion nor evidence to support his request. We are bound by the rule that judgments of the trial court on issues of fact concerning the ability to pay costs are final. *Williams v. State*, 147 Ga. App. 632 (249 SE2d 694).

Appellants having submitted nothing to support this enumeration of error, we consider it abandoned. *Haskins v. Jones,* 142 Ga. App. 153 (1) (235 SE2d 630).

*Judgment affirmed. Quillian, P. J., and Carley, J., concur.*

DECIDED MAY 3, 1984 —
REHEARING DENIED JUNE 7, 1984 — 

*Paul D. Smith, Jr.,* for appellants.
*Jack C. Bell,* for appellee.