## ROGERS *v.* HIGHNOTE.

1. If two clauses of a will are so inconsistent that both can not stand, the later will prevail; but the whole will is to be taken together, and operation is to be given every part of it, if this can be done without violating its terms or the intention of the testator. And the intention of the testator is to be sought by looking to the whole will rather than to detached parts of it.
2. By the third item of his will a testator bequeathed and devised to his wife certain real and personal property for and during her natural life, and directed that after her death the property both real and personal should be equally divided among all his children and heirs. By the fourth item he provided that his two youngest children, who are daugh-

ters, should "have all necessary provision for their raising and education from the proceeds or income arising from my estate free from charge, and after they are raised and educated they shall be properly supported and cared for from the proceeds or income arising from my estate absolutely free from any charge whatever so long as one or both of them remain single or live with their mother." By the fifth item the testator left the residue of his property both real and personal, "whereever and whatever it may be, including that disposed of in the third article above," to his wife "in the same manner as that described in the third article and also mentioned in said article." *Held*, that the will created a life-estate in the wife, with remainder to the testator's children; that the charge upon the estate for the maintenance, education, and support of the two daughters continued during the life-estate only; and that, upon the termination of such life-estate, the property was subject to division among the remaindermen.

Submitted July 16,—Decided November 13, 1906.

Injunction. Before Judge Little. Muscogee superior court. May 3, 1906.

Benjamin Highnote died September 10, 1895, leaving a will which contained the following items: "Third. I give, bequeath, and devise to my beloved wife Sarah all of real estate property consisting of lands described as follows: [describing the land], with all the rights, members, and appurtenances to said described lands in any wise belonging whatever, to her own use and behoof for and during her natural life. I also give and bequeath to wife Sarah in the same manner all of the farming utensils used and belonging to my farm and all of my live stock consisting [of] horses, mules, cows, and hogs, and all of my rolling stock consisting of wagons, buggies, etc., and all of my household and kitchen furniture. I will and direct that all the land described above in this article and all the other property also mentioned above in this article shall be my wife Sarah's and shall belong to her in the manner expressed above in this article in regard to the lands, for and during her natural life, and after death to be equally divided among all my children and heirs." "Fourth. I will and direct that the youngest of my children now small girls, Jossey and Lucinda, have all necessary provision for their raising and education from the proceeds or income arising from my estate free from charge, and after they are raised and educated they shall be properly supported and cared for from the proceeds or income arising from my estate absolutely free from any charge whatever so long as one or both of them remain single

or live with their mother." "Fifth. The residue of my property, both real and personal, wherever and whatever it may be, including that disposed of in the third article above, I give, bequeath, and devise to my wife Sarah in the same manner as that described in the third article and also mentioned in said article."

On January 16, 1906, Jossey Highnote filed her equitable petition against J. S. Rogers as guardian for Lucinda Jordan (formerly Lucinda Highnote), Henry Highnote, and N. W. Parker, sheriff, alleging, among other things, as follows: Henry Highnote is in possession, as a tenant, of the farm left by the deceased at the time of his death. Rogers, as guardian, is claiming one half of the rent for his ward, who is the sister of the petitioner named in the fourth item of their father's will. He has collected one half the rent for the year 1904 and is threatening to pay it over to his ward. He induced the tenant to give him a note for one half of the rent for the year 1905, and is now seeking to collect it, and has caused a distress warrant to be issued and levied by the sheriff upon property of the tenant. The plaintiff is still unmarried, while the sister is married and living with her husband. The rent from the farm is the only source of support for the plaintiff, and the only income or proceeds arising from the estate of her deceased father; and all of the rent or income is not sufficient to support and care for her, it only amounting to about $300 per annum. Her sister Lucinda is insolvent and unable to respond to any judgment that may be obtained against her. Plaintiff claims the entire income or proceeds for her support, she being still single. Sarah Highnote, the widow of the testator, died on July 3, 1898. The prayers were, that Rogers, as guardian, be enjoined from' paying over to his ward the money which he had collected as rents, and from interfering with the tenant or the rents arising from the property, and that plaintiff have judgment against him for the amount already collected by him; that the tenant be enjoined from paying to Rogers or his ward any part of the rents or profits of the estate, and that plaintiff have judgment against him for such rents; that the sheriff be enjoined from selling the property levied on; and for general relief and process. Rogers, as guardian, answered, admitting the making of the will; that plaintiff and Mrs. Jordan are sisters, being the two daughters of the testator mentioned in the fourth item of the will; and that he has collected a part of the

rents belonging to his ward for the year 1904, and is proceeding to collect her share of the rents due for the year 1905. He alleged, that, after the death of the testator's widow, the other children conveyed their interests in the estate to the plaintiff and her sister Lucy; that they are now holding the lands as tenants in common, each being entitled to one half of the rent therefrom; that the plaintiff is more than twenty-five years of age, and according to the terms of the will is not entitled to any support from the estate, but only to one half of the rents therefrom. On the hearing the presiding judge granted the injunction, and Rogers, as guardian, excepted.

*George P. Munro* and *T. B. Rainey,* for plaintiff in error.

*W. D. Crawford* and *W. B. Short,* for defendant.

LUMPKIN, J. (After stating the facts.)

1. Whether or not the plaintiff was entitled to an injunction depends upon the proper construction of the will of her deceased father. She contends that under its terms she is entitled to have the rents from the property applied to her support so long as she remains single, although the life-tenant is dead; and that her sister, who is married, and is living with her husband, is entitled to no part of such rents. It is alleged that the other children of the testator have conveyed their interest in the estate to these two, so that the only controversy is between them. Our learned brother of the circuit bench must have construed the will as contended for by the plaintiff, in order to have granted the injunction, and the question before us is whether this was the proper construction.

It is easy to announce the often-repeated statement that in the construction of a will the cardinal rule is that the intention of the testator shall govern, provided it is not unlawful or inconsistent with the rules of law. But the real difficulty which frequently arises is to determine what was the intention of the testator. It is often much easier to announce an abstract principle than to make a concrete application of it. In construing a will and seeking to find the intention of the testator, certain rules of law may be invoked. One of these is that the intention of the testator "is to be sought for by looking to the whole will, and not to detached parts of it." *Cook* v. *Weaver,* 12 *Ga.* 47; *Edmondson* v. *Dyson,* 2 *Ga.* 307, 312. Another is that if two clauses in a will are so inconsistent that both can not stand, the later will prevail. "The whole

will is to be taken together, and to every part of it operation is to be given, if possible, but, if this is not possible, then, in the necessary conflict of parts, the later part must prevail over the earlier." *Broach* v. *Kitchens,* 23 *Ga.* 518; *Clarke* v. *Harker,* 48 *Ga.* 596; *Vaughn* v. *Howard,* 75 *Ga.* 285; *West* v. *Randle,* 79 *Ga.* 28; *Langford* v. *Langford,* Id. 520. A similar rule has been announced in reference to construing a deed as a whole, where there is an apparent inconsistency between two clauses in it; the difference between a will and a deed being that, where there are inconsistent clauses in a will the later will prevail, while in a deed the former will do so. Civil Code, § 3607; *Maxwell* v. *Hoppie,* 70 *Ga.* 153, 160. "In the construction of wills the mode of ascertaining the testator's intent is not by arbitrary conjectures or opinions as to what he meant, but it is to be drawn from the whole instrument, under rules of law." *Felton* v. *Hill,* 41 *Ga.* 554; *Sumpter* v. *Carter,* 115 *Ga.* 894.

In the light of these rules of law let us briefly examine the provisions of the testator's will. By the third item he bequeathed and devised to his wife certain real and personal property for and during her natural life. He also directed that the property "after [her] death be equally divided among all my children and heirs." Here is a plain, unambiguous creation of a life-estate in the testator's wife, with remainder to his children, and with a direction for a division of the property upon her death. The next item provided that his two youngest children, Jossey and Lucinda, should "have all necessary provision for their raising and education from the proceeds and income arising from my estate free from charge." There is no contention that the children have not been "raised" and educated, or that either one of them is entitled to the income under the provision just quoted, but the plaintiff's claim rests upon that portion of the fourth item of the will which continues as follows: "and after they are raised and educated they shall be properly supported and cared for from the proceeds or income arising from my estate absolutely free from any charge whatever so long as one or both of them remain single or live with their mother."

Did this provide for an indefinite support of one or both of the daughters after the death of the life-tenant, so long as either remained single; or did the charge for support and maintenance continue only during the life-estate, and upon its termination was the

property subject to division among the remaindermen? We think the latter construction is the proper one. If the fourth item of the will should be construed to mean that after the death of the life-tenant the property was still to be kept together and applied to the support and maintenance of these two daughters, or one of them, so long as either should remain single, it would be in direct conflict with the last words of the item immediately preceding it, which provided for a division of the property upon the death of the life-tenant. As already stated, such clauses of a will are not to be construed as inconsistent so that one will nullify the other, if by a reasonable construction they can be harmonized and the entire will made operative. The coupling together of the two contingencies, "so long as one or both of them remain single or live with their mother," seems to indicate that the testator had in mind the charging of the estate with their support while their mother was in life and while they could live with her, and that they might terminate this right of support either by marriage of both of them or by ceasing to live with their mother. It is true that the disjunctive "or" is used; and it was not declared that one or both of the children should remain single and live with their mother; but the clause provided for two voluntary methods of terminating the charge, one by marriage, and the other by leaving their mother. If this language does not indicate that the charge was only to last during the lifetime of the mother, it is certainly not so inconsistent with that construction as to render the direction in the third item of the will ineffective. Further, while the plaintiff claims that she is entitled to the entire income for her support, to the exclusion of her sister, because the latter has married, the literal words of the will declare that "they" shall be supported and cared for from the proceeds, "so long as one or both of them remain single or live with their mother." If we should construe the fourth item of the will as prevailing over the direction as to a division upon the death of the life-tenant, contained in the third item, on the ground that the fourth item contains a later expression of the testator's wishes, this, in turn, is followed by the fifth item, which provides in regard to the residue of the testator's property that "I give, bequeath, and devise to my wife Sarah in the same manner as that described in the third article and also mentioned in said article." Here, in the very last expression of the

testator's wishes, he again refers to the third item, and to the man-- ner in which the property mentioned in it is devised, thus reaffirm- ing the testamentary scheme indicated in that item and applying it to the residue of the estate. Construing the entire will together,. we hold that the charge for the support of the testator's two daugh-- ters named in the fourth item continued only during the life-estate. created by the third item, and that after the death of the life-tenant the estate was subject to division. It follows from this that it was. error to grant the injunction.

*Judgment reversed. All the Justices concur.*